**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 1:18-cv-00950-RM-NYW

RENASANT BANK,

    Plaintiff,

v.

NORTHPOINTE BANK,
TODD CRANE, and
ROBERT SYLVIA,

    Defendants.

---

## ORDER
---

This matter is before the Court on two motions for summary judgment: one from Defendant Northpointe Bank (ECF No. 61) and one from the individual Defendants, Todd Crane and Robert Sylvia (ECF No. 62). Both motions hinge on whether Plaintiff's claims against Defendants are barred by settlement and mutual release agreements executed by Plaintiff and the individual Defendants. For the reasons given below, the Court concludes that the release agreements do not bar the claims against Defendant Northpointe Bank but do bar the claims against the individual Defendants. Accordingly, the Court denies Defendant Northpointe Bank's motion and grants the individual Defendants' motion.

**I.    LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

## II. BACKGROUND

The individual Defendants began working as branch managers for Plaintiff's predecessor bank in February 2014, and they both signed employment agreements setting forth their responsibilities and duties as employees. The employment agreements included provisions requiring them to preserve the secrecy of their employer's confidential information and not to use such information to solicit their employer's prospective or existing clients for a period of one year after the termination of their employment. The individual Defendants kept their positions when Plaintiff acquired the predecessor bank in July 2015.

In April and June 2016, the individual Defendants left their positions and began working as regional vice presidents for Defendant Northpointe Bank, a competitor of Plaintiff's. Plaintiff alleges that the individual Defendants violated various provisions of their employment agreements and committed other violations by improperly sharing its confidential information and by secretly recruiting its former employees to work for Defendant Northpointe Bank. Plaintiff further alleges that it "did not learn of Defendants' wrongful and tortious actions . . . until much later" (ECF No. 1 at ¶ 65) and that Defendant Northpointe Bank "ultimately hired most, if not all, of [its] Colorado employees" (*Id.* at ¶ 58).

In November 2016, Plaintiff and the individual Defendants executed identical release agreements. (ECF Nos. 20-1, 20-2.) Plaintiff agreed to make settlement payments of $150,000 to each individual Defendant, and the parties mutually agreed to release all claims arising out of or in any way related to the "Work" and "Remaining Work" under the employment agreements. Pursuant to the recitals portion of the release agreements, the "Work" refers to the individual Defendants' responsibilities and duties as set forth in the employment agreements, and the "Remaining Work" refers to residential mortgage applications that had been started but were not yet completed when the individual Defendants stopped working for Plaintiff. (*Id.*) Because Plaintiff's release is at the heart of this dispute, the Court quotes verbatim the release provision in Defendant Sylvia's agreement:

> Upon Renasant's payment of the Settlement Payment set forth above, Renasant hereby agrees, on its own behalf and on behalf of its respective officers, directors, predecessors, affiliates, successors and assigns, that (i) any and all claims, actions, demand, rights, damages and liabilities such party may now have or have had against Sylvia arising out of or in any way related to the Remaining Work under the Contract is settled in full; and (ii) Sylvia and his respective heirs, predecessors, affiliates, successors and assigns are completely released and forever discharged from any and all such claims, known or unknown under applicable state and/or federal law, which Renasant may now or in the future have against Sylvia, and his respective heirs, predecessors, affiliates, successors and assigns arising out of or in any way related to the Work or the Remaining Work under the Contract including, without limitation, claims for expenses or overpayment of compensation.

(ECF No. 20-1 at ¶ 4.) The release agreements also contain integration clauses and attorney fees provisions.

In April 2018, Plaintiff filed a complaint against Defendants, alleging claims for (1) breach of contract (against the individual Defendants); (2) breach of the duty of loyalty (against the individual Defendants); (3) aiding and abetting breach of the duty of loyalty (against Defendant Northpointe Bank); (4) tortious interference with the employment agreements (against

3

Defendant Northpointe Bank); (5) employee raiding (against all Defendants); (6) civil theft (against all Defendants); and (7) civil conspiracy (against all Defendants). The complaint does not mention the release agreements.

With their answers, Defendant Northpointe Bank and the individual Defendants alleged counterclaims for declaratory judgment, asserting that Plaintiff's claims are barred by the release agreements. (ECF Nos. 18, 20.) Defendants also filed motions for leave to file motions for judgment on the pleadings while preserving the right to file motions for summary judgment. (ECF Nos. 19, 21.) Plaintiff replied to the counterclaims and motions for leave. (ECF Nos. 32, 38, 39.) The Court granted in part Defendants' motions for leave, allowing Defendants to file initial dispositive motions under Fed. R. Civ. P. 56 on or before October 15, 2018, and, if necessary, to file a second round of dispositive motions to address factual disputes. (ECF No. 60.) Defendants filed their initial motions, Plaintiff has responded, and the matter is ripe for a determination by the Court. Defendants contend that Plaintiff's claims are barred by the release agreements. Defendant Northpointe Bank contends that even though it is not a signatory to the release agreements, it can take advantage of the agreements because it is an affiliate of the individual Defendants.

## III. DISCUSSION

The release agreements provide that they are governed by Georgia law, and both sides rely, for the most part, on Georgia law. The Court also applies Georgia law.[1] Under Georgia

---

[1] The release agreements also provide that all matters arising out of or relating to the release agreements "will be decided by proceedings instituted and litigated in a court of competent jurisdiction sitting in the State of Georgia." (ECF No. 20-1 at ¶ 6.) Because neither party has sought to enforce the forum selection clause, the Court deems the issue waived. *See Stjernholm v. Peterson*, 83 F.3d 347, 349 (10th Cir. 1996) ("A party waives the right to challenge venue if he fails to raise that defense either in his responsive pleading or in a motion to dismiss under Fed. R. Civ. P. 12(b)(3).").

law, courts follow a three-step process for examining contracts. *See Begner v. U.S.*, 428 F.3d 998, 1005 (11th Cir. 2005). First, if the contract language is clear and unambiguous, "the court simply enforces the contract according to its clear terms." *Id.* (quotation omitted). Second, "if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity." *Id.* (quotation omitted). Third, if the court cannot resolve the ambiguity, the meaning of the ambiguous language must be determined by a trier of fact. *Id.*

### A. Claims Against the Individual Defendants

Because the language of the release agreements is clear and unambiguous with respect to Plaintiff's claims against the individual Defendants, the Court resolves their motion at the first step.

The Plaintiff's release provision has two subparts. The first subpart pertains only to claims "related to the Remaining Work" and does not apply here. (ECF No. 20-1 at ¶ 4.) But the second subpart is much broader and does apply. It provides that the individual Defendants "are completely released and forever discharged from any and all such claims, known or unknown . . . which [Plaintiff] may now or in the future have against [them] arising out of or in any way related to the Work or the Remaining Work." (*Id.*) Such language leaves little room for interpretation. Plaintiff's claims clearly arise out of or are related to the individual Defendants' responsibilities and duties as set forth in the employment agreements. Accordingly, the Court finds the individual Defendants are completely released from the claims in Plaintiff's complaint.

The Court now addresses Plaintiff's arguments to the contrary. First, Plaintiff argues that the Work "is best understood as relating to compensation predating the remaining workflow." (ECF No. 63 at 4.) But this definition cannot be found in the release agreements. Moreover, the

settlement payment provision states that the $150,000 payments are a "full and final settlement for all claims or potential claims arising out the [employment agreements], including but *not limited to, claims for Compensation*." (ECF No. 20-1 at 2 (emphasis added).) Further, the recitals portion of the release agreements states that "the Parties wish to fully and finally resolve any and all claims, rights or entitlements that [the individual Defendants] may have or assert for Compensation under the [employment agreements] *or otherwise related to the Work*." (*Id.* at 1 (emphasis added).) If the Parties intended to limit the release agreement to claims strictly related to compensation, they should have used more precise language.

Next, Plaintiff argues that the parties could have used the terms "employment" and "general release" if they intended a broad release. It is not clear that these terms would materially alter the meaning of the release agreements, but in any event, the Court's interpretation focuses on the terms that are included in the release agreements rather than hypothetical terms that might have been included.

Plaintiff also argues that "Work" refers to "the provision of labor for which compensation is due." (ECF No. 63 at 5.) Plaintiff's reliance on alternate definitions from wage and hour laws and other contexts is misplaced. As mentioned above, the release agreements define the term to mean the individual Defendants' responsibilities and duties pursuant to their employment agreements, and the Court accepts and relies on this definition. Plaintiff's attempts to distinguish "Work" from the individual Defendants' employment by redefining the former are unavailing.

Plaintiff contends that its claims are outside the scope of the release agreements because they are based on conduct by the individual Defendants that is unrelated to the specific duties and responsibilities set forth in the employment agreements. But this contention does not hold

up to scrutiny. It is the individual Defendants' alleged failure to perform these duties that animates Plaintiff's breach of contract claims. And even though an employee's duty of loyalty arises independently of an employment agreement, that is not to say that it does not arise out of or relate to the employee's duties and responsibilities. If the release agreements covered only employee conduct outlined in the employment agreements, the benefit of the Plaintiff's release provision to the individual Defendants would be illusory. Plaintiff would have no basis for asserting a claim in the first place if their performance perfectly matched the duties and responsibilities set forth in the employment agreements. The Court declines to adopt such an absurd interpretation of the release agreements. The same reasoning applies to Plaintiff's argument that its claims for employee raiding, civil theft, and civil conspiracy are not within the scope of the release agreements. Plaintiff fails to explain how the individual Defendants could have committed such conduct without violating their duties and responsibilities under the employment agreement.

Finally, Plaintiff argues that the individual Defendants' conduct after their employment ended cannot be included in the definition of the individual Defendant's duties and responsibilities under the employment agreement. This makes little sense. Certain provisions of the employment agreements were enforceable for up to a year after the individual Defendants' employment ended. And the release provision expressly applies to claims that are "known or unknown" or which Plaintiff "may now or in the future have" against the individual Defendants. (ECF No. 20-1 at ¶ 4.)

Plaintiff has not identified any coherent claims against the individual Defendants that fall outside the release agreements. Therefore, the individual Defendants are entitled to summary judgment based on the unambiguous terms of the release agreements.

B. **Claims Against Defendant Northpointe Bank**

The Plaintiff's release provision expressly applies to the individual Defendants and their "respective heirs, predecessors, affiliates, successors and assigns." (ECF No. 21-1 at ¶ 4.) Defendant Northpoint Bank, which is neither a signatory nor a named beneficiary of the release agreements, contends that Plaintiff's claims against it are barred because it is an "affiliate" of the individual Defendants. The Court concludes as a matter of law that no reasonable jury could conclude Defendant Northpointe Bank is an affiliate of the individual Defendants based on the employment relationship alone.

Applying Georgia law, the Court first concludes that the term "affiliates" as used in the release agreements is ambiguous for present purposes. Its precise meaning is not clear on its face, and the release agreements do not define it. Accordingly, the Court advances to the second step of the Georgia process and resolves the ambiguity by applying the rules of contract construction. *See* Ga. Code Ann. § 13-2-2. Most helpful here is the rule stating that "[w]ords generally bear their usual and common signification." § 13-3-2(2). The Court also considers and applies the rule that "[t]he construction which will uphold a contract in whole and in every part is to be preferred." § 13-2-2(4).

In arguing that the release agreements apply to it, Defendant Northpointe Bank cites two Georgia cases. In *Hubbard/Downing, Inc. v. Keven Heath Enterprises*, No. 1:10-cv-1131-WSD, 2013 WL 12239523, at *7 (N.D. Ga. May 30, 2013) (unpublished), the court determined that an

entity and the individual who owned and controlled it were "affiliates" of another entity that had entered into a settlement agreement, and therefore they were bound by it. In *Harkins v. CA 14th Investors, Ltd.*, 544 S.E.2d 744, 745 (Ga. Ct. App. 2001), the court determined that a company that was part of a joint venture with the parent company of the entity with which the plaintiff had executed a release, was a "related" and "affiliated" company under the terms of the release, and therefore the plaintiff's claim against it was barred. Neither case considered the precise issue here—whether an entity that employs two individuals as regional vice presidents is considered an "affiliate" of those individuals. Though Defendant Northpointe Bank extracts language from the above cases to argue that Georgia courts have adopted a broad definition of "affiliate" that applies to it, such language is dicta with respect to the present issue. Neither case stands for the proposition that an employer can be an affiliate of its employees under present circumstances.

Under Georgia law, the usual and common meaning of a word may be supplied by common dictionaries. *See King v. GenOn Energy Holdings, Inc.*, 747 S.E.2d 15, 17 (Ga. Ct. App. 2013). The current (third) edition of the *New Oxford American English Dictionary* defines an affiliate as "a person or organization officially attached to a larger body," which does little to help clarify matters here. Nonetheless, the Court finds Defendant Northpointe Bank's interpretation of "affiliate" is not consistent with the usual and common meaning of the word. It is not usual or common to refer to one's employer as one's "affiliate." Thus, Defendant Northpointe Bank's interpretation contravenes the principle set forth in § 13-2-2(2).

Plaintiff meanwhile urges the Court to adopt the definition from the current (tenth) edition of *Black's Law Dictionary*, which defines an affiliate as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling

9

corporation." This definition implies that only corporations can be affiliates. The problem with adopting such a meaning here is that it would require the Court to ignore the term "affiliates" as it is used in the release agreements. This would contravene the principle set forth in § 13-2-2(4).[2] Nonetheless, because the Court discerns no basis for concluding that an employer can become an affiliate of its employees solely by virtue of the employment relationship, Defendant Northpointe Bank is not entitled to summary judgment on this issue.

Defendant Northpointe Bank separately argues that it is entitled to summary judgment on Plaintiff's employee raiding claim because that cause of action does not exist under Colorado law. As it notes in its reply brief, however, Colorado courts have yet to hold that there is a separate cause of action for employee raiding. (ECF No. 71 at 13.) That does not amount to authority for the proposition that no such cause of action could exist under Colorado law. In the absence of such authority, Defendant Northpointe Bank has not shown it is entitled to summary judgment on this ground.

C. **Attorney Fees**

Defendants argue that they are entitled to attorney fees under the release agreement. Because the individual Defendants have prevailed on their motion, the Court agrees that they are entitled to attorney fees under the release agreement. Defendant Northpointe Bank has not prevailed and therefore is not entitled to attorney fees at this stage of the case.

---

[2] To the extent the law from other jurisdictions cited by Plaintiff is relevant, the Court does not find it provides a compelling basis for resolving this matter.

## IV. CONCLUSION

Therefore, the Court DENIES Defendant Northpointe Bank's motion for summary judgment (ECF No. 61) on its counterclaim and on Plaintiff's claims. The Court GRANTS the individual Defendants' motion for summary judgment (ECF No. 62) on their counterclaim and Plaintiff's claims. In addition to entry of declaratory judgment in their favor, the individual Defendants are entitled to attorney fees pursuant to the release agreement. The stay granted in the Court's September 21, 2018, Order is lifted, and, pursuant to that Order, Defendant Northpointe Bank may file a second motion for summary judgment.

DATED this 1st day of July, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge